UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE DAVIS,

                Plaintiff,                Civil Action No. 19-12121
                                                           Honorable Laurie J. Michelson
v.                                                 Magistrate Judge David R. Grand

REGENTS OF THE UNIVERSITY
OF MICHIGAN, SALLY J.
CHURCHILL, REBECCA PICKUS,
and MARIA VISCONTI,

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 11)

On October 30, 2019, Defendant Maria Principato ("Principato") (nee Visconti) filed a Motion for Summary Judgment Based on Failure to Exhaust and to Dismiss Based on Sovereign Immunity. (ECF No. 11). *Pro se* Plaintiff Andre Davis ("Davis"), an incarcerated person,[1] filed a response to this motion on December 2, 2019 (ECF No. 15), and Principato filed a reply on December 10, 2019 (ECF No. 16). An Order of Reference was entered on November 1, 2019, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 12).

---

[1] Principato provides a detailed summary of Davis' criminal history in her opening brief and again in her reply brief. (ECF No. 11, PageID.56; ECF No. 16, PageID.135-36). The information was irrelevant to Principato's motion, and to have provided it a second time suggests it was nothing more than an improper attempt to negatively influence the Court against Davis. However, the same grievance procedures apply to all inmates, regardless of the crimes for which they have been convicted, and the Court is not permitted to make credibility assessments at the summary judgment stage. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). The Court therefore gives no consideration to the discussion in Principato's papers of Davis' criminal history.

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. L.R. 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Principato's Motion for Summary Judgment (**ECF No. 11**) be **GRANTED**.

## II.    REPORT

### A.     Background

Davis is a Michigan Department of Corrections ("MDOC") prisoner and is currently confined at the Chippewa Correctional Facility ("URF") in Kincheloe, Michigan.  He brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights.  (ECF No. 1).  At the time of the events at issue in his complaint, Davis was housed at the Macomb Correctional Facility ("MRF") in Lenox Township, Michigan.

In his complaint, Davis alleges that, in January 2018, he was one of fifteen prisoners selected to participate in the University of Michigan's ("UM") "Inside-Out Prison Exchange Program"[2] at MRF.  (*Id.* at 6, PageID.6).  He claims that, in February 2018, he was wrongfully terminated from that program after he submitted a writing assignment to

---

[2] UM's Inside-Out Prison Exchange Program, which is part of a larger nationwide program, brings together people in prison and academia to study crime, justice, and related social issues as peers. *See* https://www.insideoutcenter.org/about-problem-statement.html (last accessed December 30, 2019).

2

his UM class instructor, Defendant Rebecca Pickus.  (*Id.* at 11-12, PageID.11-12). Specifically, Davis asserts that Principato – MDOC's Corrections Program Coordinator – informed him that Pickus "had contacted the University and requested [Davis] be removed from the class because of [an] assignment paper he turned in" that Pickus apparently determined to have violated the Program's rules. (*Id.* at 11, PageID.11-12).

In his complaint, then, Davis alleges that he was terminated from UM's Inside-Out Program without due process and in retaliation for the viewpoints he expressed, which he claims did not violate the Program's rules. (*Id.* at 13-16, PageID.13-16). He also alleges that he was treated less fairly than other similarly-situated prisoners participating in the program. (*Id.* at 13-16, PageID.13-16). In addition to Principato, Davis sues the Regents of the University of Michigan, UM Vice-President Sally Churchill, and Instructor Rebecca Pickus (the "UM Defendants"), seeking compensatory damages, punitive damages, interest, and costs. (*Id.* at 16, PageID.16).

Principato, the sole MDOC defendant, now moves for summary judgment on Davis' claims against her, arguing that he failed to properly exhaust his administrative remedies before filing the instant lawsuit.[3]

B.  **Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and

---

[3] Principato also moves to dismiss Davis' official capacity claims against her, arguing that they are barred by Eleventh Amendment immunity. (ECF No. 11, PageID.64). Because the Court is recommending granting summary judgment in Principato's favor on other grounds, it need not address in detail the merits of Principato's Eleventh Amendment argument.

3

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **C.**    **Analysis**

In her motion, Principato argues that summary judgment is warranted on Davis'

claims against her because Davis failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 11 at 7-14, PageID.57-64). The Court agrees.

### *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### *The MDOC's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances"

5

(the "Policy"). (ECF No. 11-2, PageID.69). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ B). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id*. at ¶¶ P, V). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ BB). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ FF). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ B).

### *Davis Fails to Raise a Material Question of Fact as to Whether He Properly Exhausted his Grievance Against Principato*

In her motion, Principato argues that Davis did not properly exhaust his claims against her because he did not file a Step III grievance appeal related to the events at issue in this case. (ECF No. 11, PageID.63). Principato attaches to her motion a copy of Davis' "MDOC Prisoner Step III Grievance Report," which shows that he pursued three grievances to Step III while at MRF in 2018, none of which relate to his current complaints against Principato. (ECF No. 11-3, PageID.76).

In response, Davis argues that he exhausted all administrative remedies that were *available* to him. Specifically, Davis asserts that after he was removed from the Inside-

Out Prison Exchange Program on February 20, 2018, he filed a Step I grievance against Principato on February 25, 2018 (Grievance No. MRF-2018-03-0379-28B). (ECF No. 15, PageID.128). Davis provides proof that his grievance was received by MRF's Grievance Coordinator, E. Taylor, on March 2, 2018. (*Id.*, PageID.128). In the meantime, however, Davis was transferred from MRF to URF on February 27, 2018. (*Id.*, PageID.123). He claims that it was not until May 15, 2018, when he was confined at Marquette Branch Prison ("MBP"),[4] that he finally received a response to his grievance. (*Id.*, PageID.124). That response, titled "Grievance Rejection Letter," is dated March 2, 2018, and indicates that Davis' grievance was rejected as "vague." (*Id.*, PageID.129).

According to Davis, when he received this Step I response to his grievance, he asked MBP's Grievance Coordinator, G. Caron, for a Step II appeal form. (*Id.*, PageID.124). Davis claims that Caron "did not supply a 2nd Step Appeal form, but instructed [him] to contact MRF with his request." (*Id.*). Davis provided the Court with a copy of his May 15, 2018 letter to Caron which reflects Davis' request for a Step II appeal form as well as Caron's May 17, 2018 handwritten response instructing Davis to contact MRF. (*Id.*, PageID.130). In his response to Principato's summary judgment motion, Davis claims simply, "A subsequent letter to E. Taylor at MRF[] received no reply." (*Id.*). However, Davis does not identify the date he allegedly sent this letter, and he did not provide a copy of it to the Court. Ultimately, Davis argues that he "attempted to fully exhaust, but ***the Grievance Coordinator at MBP*** [i.e., Caron] did not follow the MDOC's Policy Directive

---

[4] Apparently, Davis was temporarily transferred from URF to MBP in May of 2018 to "facilitate emergency neurosurgery[.]" (ECF No. 15, PageID.124).

7

on Grievances." (*Id.*) (emphasis added).

The United States Supreme Court has recently reiterated that the PLRA's exhaustion requirement hinges on the *availability* of administrative remedies: an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Courts have recognized, in some circumstances, that "although completing Step III [of the grievance process] is a sufficient condition, it is not always a necessary one." *Palmer v. Flore*, 3 F. Supp. 3d 632, 637 (E.D. Mich. 2014); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (the Sixth Circuit requires an inmate to make affirmative efforts to comply with the administrative procedures and analyzes whether those efforts to exhaust were sufficient under the circumstances).

Here, Davis has not raised a material question of fact as to whether the grievance process was "unavailable" to him. He was provided a Step I grievance form and the Step I process was completed. He then asked Caron, the Grievance Coordinator at his new prison, MBP, for a Step II grievance form, and Caron promptly responded, instructing Davis "to contact MRF with this request." (ECF No. 15, PageID.130). Davis now argues that Caron's response "did not follow the MDOC's Policy Directive on Grievances" and that it was that error that rendered the grievance process "unavailable" to him. (*Id.*, PageID.125). This argument lacks merit.

First, careful review of the Policy makes clear that Caron did not violate the Policy when he advised Davis that he would need to request a Step II appeal form from MRF. Indeed, the Policy specifically provides, in relevant part:

> Step I
>
> V. Within five business days after attempting to resolve a grievable issue with staff, a grievant may send a completed Prisoner/Parolee Grievance (CSJ-247A) to **the Step I Grievance Coordinator designated for the facility, field office, or other office being grieved**; if the office being grieved does not have a designated Grievance Coordinator, the grievance shall instead be sent to the Step I Grievance Coordinator for the facility in which the grievant is housed or appropriate field office for processing. . . .
>
> * * * *
>
> Step II
>
> BB. To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from **the Step I Grievance Coordinator** and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved …. If the office being grieved does not have a designated Grievance Coordinator, the grievant is to send the grievance to the Step II Grievance Coordinator for the facility in which s/he is housed or appropriate field office for processing.

(ECF No. 11-2, PageID.73, ¶¶ V, BB) (emphasis added).

Reading these provisions of the Policy together makes clear that Davis was required to have requested the Step II appeal form from "the" Step I Grievance Coordinator, who Davis had already been informed was "Grievance Coordinator: E. Taylor" at MRF. (ECF No. 15, PageID.129). Thus, contrary to Davis' assertion, Caron did not violate the Policy when he told Davis: "You need to contact MRF" to request a Step II appeal form. (*Id.*, PageID.130).

Moreover, Davis presents no *evidence* that he ever actually requested a Step II appeal form from Grievance Coordinator E. Taylor at MRF. All Davis does is make the vague statement in his response brief that, "A subsequent letter to E. Taylor at MRF[]

9

received no reply." (*Id.*, PageID.125). That statement is not "evidence" the Court may consider at the summary judgment stage. *See Veeder v. Tri-Cap*, No. 17-cv-11690, 2018 WL 7254610, at *8 (E.D. Mich. Dec. 13, 2018). Moreover, Davis' assertion is so vague – he neither identifies the letter's date nor says anything about its contents – that it would be of little value even if it had been presented in a proper affidavit. Thus, Davis failed to raise a material question of fact as to whether the grievance process was unavailable to him and whether he properly exhausted his grievance against Principato.

The two cases relied on by Davis do not change the analysis. In *Young v. Jackson*, No. 12-12751, 2013 WL 8178397, at *8-9 (E.D. Mich. Nov. 13, 2013), the plaintiff did not dispute that he failed to file a Step II grievance. He argued, as Davis does here, that the prison failed to follow its own policy by not giving him a grievance appeal form when he requested one. In rejecting the defendants' failure to exhaust argument, the court found that the defendants "have a duty to follow MDOC policy and provide prisoners with Grievance Appeal forms when so requested" and that the plaintiff had actually made "numerous requests [] in an effort to obtain the appropriate form … [which] show that he was attempting to comply with MDOC policy where the prison was not." *Id.* at *9. Here, however, as explained above, Davis failed to show that the prison failed to follow its own policies. Moreover, unlike the plaintiff in *Young*, who established that he had made "numerous requests" for a Step II grievance appeal form from the appropriate grievance coordinator, Davis failed to establish that he made even a single such request.

Davis also cites *Graham v. Chicowski*, No. 16-12258, 2017 WL 3097803, at *5 (E.D. Mich. Apr. 18, 2017), but that case, too, is distinguishable. In *Graham*, the court

10

found that the plaintiff inmate presented unrebutted evidence that, at a minimum, raised a question of fact as to whether the grievance process was "available" to him. There, however, the plaintiff provided significantly more evidence than Davis has here, including copies of several letters he had written and evidence demonstrating that his father and sister had made phone calls and written letters on his behalf in an attempt to advance his grievance through the process. In contrast, Davis presents no actual evidence that he requested a Step II form from the appropriate grievance coordinator, and his one unsupported statement that "[a] subsequent letter to E. Taylor at MRF[] received no reply" is exceedingly vague. (ECF No. 15, PageID.125). Moreover, unlike the plaintiff in *Graham*, it is undisputed that Davis took no further action to attempt to exhaust his grievance, and then waited until July of 2019, to file his complaint in this case.

For all of these reasons, Davis has not established a genuine issue of material fact as to whether the MDOC's grievance process was unavailable to him such that his failure to exhaust his administrative remedies should be excused.[5] Accordingly, Principato's motion for summary judgment on exhaustion grounds should be granted.

---

[5] The contrary ruling urged by Davis would render the exhaustion requirement meaningless, as an inmate who actually failed to file a Step II appeal could always simply claim to have done so. While this view could theoretically incentivize prisons to "lose" grievance appeals, cases like *Young* and *Graham* show that adequate protections exist against that concern. The issue boils down to the inmate presenting sufficient *evidence* to at least raise a material question of fact that he took reasonable steps to properly exhaust his grievance. Davis has simply failed to do so here. He could have provided a copy of his alleged letter to E. Taylor at MRF (as he did with his other grievance documents) or he could have written to MRF a second time when he did not hear back and provided a copy of that letter to the Court. Instead, Davis merely wrote in his response brief, "A subsequent letter to E. Taylor at MRF[] received no reply." (ECF No. 15, PageID.125). Again, that is not enough to raise a genuine question of material fact.

11

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Principato's Motion for Summary Judgment **(ECF No. 11)** be **GRANTED**.

Dated: December 30, 2019  　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan  　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## REVIEW

The parties to this action may object to and seek review of this Order and Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

*Note these additional requirements at the direction of Judge Michelson:*

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Order and Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length

12

and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 30, 2019.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager