UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE DAVIS,

    Plaintiff,

v.

REGENTS OF THE UNIVERSITY
OF MICHIGAN, et al.,

    Defendants.

Case No. 19-12121
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

# OPINION AND ORDER
# ADOPTING REPORT AND RECOMMENDATION [32] AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [27]

Andre Davis, who is currently incarcerated, filed a pro se complaint alleging violations of his constitutional rights in connection with his termination from the University of Michigan's Inside-Out Prison Exchange Program. Davis sued the University of Michigan, two university employees, and a Michigan Department of Corrections (MDOC) program coordinator. The Court previously dismissed the claims against MDOC defendant Maria Principato (née Visconti). (ECF No. 23.) The University of Michigan defendants now bring a separate motion for summary judgment. (ECF Nos. 26, 27.) Magistrate Judge David R. Grand issued a report and recommends granting the motion. (ECF No. 32.) Davis objects. (ECF Nos. 33, 34.) For the reasons stated below, the Court overrules Davis' objections and adopts the recommendation to grant Defendants' motion for summary judgment.

# I.

At the time of the incident giving rise to Davis' complaint, he was incarcerated at the Macomb Correctional Facility (MRF), an MDOC prison. (ECF No. 1, PageID.6.) In January 2018, Davis was selected to participate in the University of Michigan's "Inside-Out Prison Exchange Program." (*Id.*) The Inside-Out Program "facilitates dialogue and education" by "bring[ing] traditional college students and incarcerated students together in jails and prisons for semester-long learning." (ECF No. 27-1, PageID.250.) The Inside-Out class at MRF was led by Defendant Rebecca Pickus. (ECF No. 1, PageID.6.)

At the first class held at the prison, Pickus talked at length about the rules and policies of the Inside-Out Program and gave each "inside" student a copy of the rules. (ECF No. 27-3, PageID.257; ECF No. 27-4; ECF No. 1, PageID.8.) According to Pickus, she "emphasized repeatedly and explicitly that failure to comply with the program rules would result in immediate dismissal from the program and reminded the inside students that removal from the program could be followed by further disciplinary action at the discretion of [MDOC]." (ECF No. 27-3, PageID.257.) She also emphasized that "due to the unique nature of the program and the associated safety and security concerns, there was zero tolerance for rules violations." (*Id.*) Davis signed a copy of the rules, indicating his understanding and agreement (*Id.*)

Within the first two months of the class, the students had two "Reflection & Analysis" papers due. (*Id.*) According to Pickus, when she received Davis' first paper, she became immediately concerned because his paper "demonstrated an

2

inappropriate and uncomfortable fixation on [her] personally, with a disproportionate intensity and dramatization of [her] identity and role in the class." (*Id.* at PageID.258.) Pickus also stated that Davis was the only student in the class who failed to engage with the three analysis questions required by the assignment. (*Id.*) Davis disagrees with this characterization and says that Pickus' positive comments on his paper undermine her claims that she was concerned about the content. (ECF No. 30, PageID.306–307.) Pickus wrote on Davis' paper: "Good first paper. You clearly think critically about and engage earnestly with complex topics and your analyses and reflections are thoughtful. . . . I look forward to your contributions in future classes." (ECF No. 30, PageID.323.)

Pickus provides an explanation for this inconsistency. She states that she was troubled by Davis' "failure to complete the assignment and his lack of proper boundaries," but as a first-time instructor, was unsure how to best handle the situation. (ECF No. 27-3, PageID.258.) Pickus sought advice from another professor with more experience with the Inside-Out Program. (*Id.*) Pickus decided to respond to Davis' paper by exclusively addressing course content and themes, while ignoring improper content and asking Davis to answer the analysis questions in future papers. (*Id.*)

But, according to Pickus, Davis' second paper "contained a dramatic increase in inappropriate content." (*Id.*; *see* ECF No. 27-7.) She found that the paper "again exhibited an over-familiarity and inappropriate closeness and fixation with me." (ECF No. 27-3, PageID.258.) From Davis' point of view, his paper was responding to

3

the questions Pickus had posed to him in her comments on his first paper. (ECF No. 1, PageID.11.)

After receiving Davis' second paper, Pickus was inclined to ask the prison to remove Davis from the class but first consulted with her colleagues at the university about that option. (ECF No. 27-3, PageID.258.) Following these consultations, Pickus emailed Maria Principato, the Special Activities Director at MRF, and requested Davis' removal from the class. (*Id.*; ECF No. 27-8.) In the email, Pickus explained that she believed the content of Davis' paper demonstrated he was not a good fit for the class. (ECF No. 27-8, PageID.278.) Pickus gave several examples of the problematic content, including a fixation and over-familiarity with her, a refusal to respond to the questions posed about the readings, a statement that he was ambivalent about taking the class, and an over-dramatization and intensity that did not relate to the purpose of the course or class discussions. (*Id.*) Principato responded via email stating that she had removed Davis from the class and would be transferring him to another prison as soon as possible. (ECF No. 27-9.)

After Davis was removed from the class, he still submitted his third paper to Pickus by having another student bring it to class. (ECF No. 27-3, PageID.258; ECF No. 27-10.) According to Pickus, "this paper continued [Davis'] pattern of inappropriate language and content, and lack of recognition of proper boundaries." (ECF No. 27-3, PageID.258.)

As a result of his removal from the program, Davis was also transferred from MRF to the Chippewa Correctional Facility in Michigan's Upper Peninsula. (ECF No. 1, PageID.13.)

After he was removed from the class, Davis submitted grievances to MDOC and the University of Michigan. (ECF No. 1, PageID.12.) Defendant Sally Churchill responded on behalf of the university, explaining that Davis' dismissal from the Inside-Out Program "for violating program rules was deemed to be appropriate and supported by ample evidence." (ECF No. 27-12, PageID.294.)

Davis argues that Pickus' and Churchill's "negative assessment" of him is "an unfair and inaccurate portrayal of his performance" and "part of a retaliatory effort instigated by Defendant Pickus." (ECF No. 1, PageID.12.) In contrast, Pickus avers that her only motivation for requesting Davis' removal from the class was "his repeated failure to engage course material and recognize proper student/instructor boundaries, which [Pickus] considered to be IO program rule violations." (ECF No. 27-3, PageID.258.)

Davis sued the University of Michigan, Pickus, Churchill, and Principato alleging First Amendment retaliation, violation of due process, and violation of the Equal Protection Clause. (ECF No. 1, PageID.13–16.) All pretrial matters in the case were referred to Magistrate Judge Grand. (ECF No. 12.) Principato was previously granted summary judgment on exhaustion grounds. (ECF No. 23.) The University of Michigan defendants now move for summary judgment based on exhaustion, sovereign immunity, and qualified immunity. (ECF No. 27, PageID.225.) Magistrate

Judge Grand filed a report and recommendation that Davis' remaining claims be dismissed because they are barred by sovereign and qualified immunity. (ECF No. 32.) Davis filed 10 objections to the report and recommendation. (ECF Nos. 33, 34.)

II.

A district judge reviews a magistrate judge's findings under one of two standards. When a party objects to a magistrate judge's report and recommendation, a district judge reviews the issues raised by the objections de novo; but the district judge has no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs.*, LLC, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012). But when a party objects to a magistrate judge's order, a district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

When considering a motion for summary judgment, the Court grants the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451–52 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And "a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516 (6th Cir. 2019) (internal citations omitted).

**III.**

The Court will address each of Davis' 10 objections in turn.

**A.**

Davis first argues that the report incorrectly applies its stated rule that on summary judgement a court "assumes the truth of the nonmoving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party." (ECF No. 32, PageID.342 (citing *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).).

It is true that when ruling on a motion for summary judgment "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But this does not mean that the Court accepts the non-moving party's claims as true: "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 257.

Davis suggests that the report improperly assumes that Pickus' declaration is true. But the only example Davis gives to support this allegation is an excerpt from the factual background of the report where Judge Grand explains the contentions contained in Pickus' affidavit. (*See* ECF No. 32, PageID.339.) Judge Grand quotes directly from Pickus' affidavit and simply states her arguments without taking a position on their credibility or veracity. (*Id.*) This is not improper. Further, as will be discussed below, Davis does not create a genuine dispute over the truth of Pickus' affidavit.

7

**B.**

Davis next takes issue with Judge Grand's dismissal of his equal protection claim because Davis believes the claim was adequately pled.

Judge Grand found that Davis' conclusory allegation that he was treated less favorably than other similarly situated persons was insufficient to plead a violation of the Equal Protection Clause. (ECF No. 32, PageID.341.) The Court agrees with Judge Grand. "The threshold element of an equal protection claim is disparate treatment." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Davis has not pled any facts to support his conclusory allegation that he was treated differently than a similarly situated student. For purposes of this claim, Davis cannot argue that he was similarly situated to the other inmates in the Inside-Out class at MRF simply because they were all in the class together. To support his claim Davis would need to plausibly plead that there were other "inside" students that submitted papers of a similar nature that suggested over-familiarity with the teacher, failed to engage with the discussion questions, etc., but were not disciplined. Davis has not done so. So his equal protection claim is properly dismissed.

**C.**

Davis' third objection relates to Judge Grand's determination that the claims against Defendants in their official capacities are barred by the Eleventh Amendment. (ECF No. 33, PageID.359.) More specifically, Davis believes his complaint includes a request for specific prospective injunctive relief, which, under *Ex Parte Young*, may enable him to avoid sovereign immunity (referred to by the

parties as "Eleventh Amendment immunity"). Davis objects to Judge Grand's finding that his complaint does not seek prospective injunctive relief.

Under the Eleventh Amendment, states are immune from suit by private citizens. *See* U.S. Const. amend. XI. However, the Supreme Court carved out an exception to the Eleventh Amendment for plaintiffs suing state officials in their official capacities for prospective injunctive relief. *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *see also Carten v. Kent State University*, 282 F.3d 391, 395 (6th Cir. 2002).

Judge Grand found that "Davis' [complaint's] vague reference to 'other equitable relief [that] appears appropriate at the time of final judgment' is hardly a present request for specific prospective injunctive relief." (ECF No. 32, PageID.345.) And, to the extent that Davis was asking to be reinstated to the Inside-Out Program, Davis was seeking unavailable retrospective relief. (*Id.*)

In his objections, Davis insists that he is indeed seeking prospective equitable relief, but that "the relief would have to be fashioned for these facts, and that type of

9

judicial intervention occurs through the flexibility inherent in equitable procedure." (ECF No. 33, PageID.360.)

Although it is true that the Court has broad equitable powers to fashion appropriate relief, in order to state a claim for prospective relief, Davis must give the Court some indication of the type of remedy he seeks. Even in his objections, it is still not clear to the Court what kind of relief Davis seeks.

Even if the Court broadly construes Davis' request for relief to include some sort of reinstatement or placement into another class, his request does not fall within the *Ex Parte Young* exception. Reinstatement to a prior position can constitute prospective relief when there is an ongoing violation of law. *See Carten*, 282 F.3d at 396; *see also Turker v. Ohio Dep't of Rehab. and Corrs.*, 157 F.3d 453, 459 (6th Cir. 1998). But because the Winter 2018 Inside-Out class has already ended, Davis makes no allegation of an ongoing violation of law. And even if Davis seeks to be placed in another Inside-Out class at MRF, this relief could not be granted against the remaining university defendants: as employees of the University of Michigan and not the MDOC, they do not have the ability to move Davis back to MRF or another facility that offers a University of Michigan-affiliated class.

So the Court agrees that Davis' complaint does not seek prospective equitable relief for an ongoing violation of federal law and his claims against Defendants in their official capacities are barred by sovereign immunity.

**D.**

In his fourth objection, Davis disputes Judge Grand's ruling that Defendant Sally Churchill cannot be constitutionally liable for simply responding to his grievance letter. The report notes that there is no dispute that Churchill's only involvement with Davis' dismissal from the Inside-Out Program is that she responded to Davis' grievance letter that he wrote to the University of Michigan Board of Regents. (ECF No. 32, PageID.345.) Churchill played no role in the decision to remove Davis from the program. She simply informed him that his removal for violating program rules was deemed appropriate and supported by ample evidence. (ECF No. 27-12.)

Judge Grand stated that the "law is clear that Davis fails to state a plausible claim against Churchill where her alleged liability is based only upon her response to his grievance, rather than any direct involvement in the alleged unconstitutional conduct," and cited two Sixth Circuit cases in support. (ECF No. 32, PageID.345–346.)

Davis argues that because Churchill is an attorney, she had an ethical duty to protect Davis' constitutional rights. (ECF No. 33, PageID.363.) And Davis protests Judge Grand's citation to cases from the prisoner-grievance context, arguing that only cases in the education context are relevant. (*Id.* at PageID.362.) Even if this were true, the reasoning of these cases apply outside the prison context. It is a general rule that "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999). And Davis offers no argument why Churchill's conduct should fall outside of this general rule. So because Davis' only allegation against Churchill is that she did not act upon his grievance letter, Davis fails to state a claim against Churchill.

**E.**

Davis' fifth and ninth objections seem to principally take issue with the finding that Davis failed to provide any specific evidence that Pickus retaliated against him for exercising his First Amendment rights. (ECF No. 33, PageID.363, 373; ECF No. 32, PageID.347.)

As a preliminary note, Davis makes much of the fact that Defendants' motion for summary judgment appended a copy of his first paper that did not include Pickus' handwritten comments. (ECF No. 33, PageID.364, 373.) But the Court had access to, and duly considered, the version of the paper with comments because Davis submitted it along with his complaint.

At bottom, Davis' fifth objection seems to suggest that Davis' own allegations and the evidence he presented, namely a copy of his first paper with Pickus' handwritten notes, are in direct conflict with Pickus' declaration, and that Judge Grand chose to believe Pickus' account instead of Davis'. (ECF No. 32, PageID.364–368.) In reality, the two accounts can be harmonized. The Court gives due weight to the evidence presented by Davis and can understand why Davis felt blindsided by his removal from class after he received positive comments on his first paper. But Pickus plausibly explains this discrepancy: she states that she immediately felt

uncomfortable after receiving Davis' first paper, but decided to give Davis another chance and tried to redirect him to focus on the class material by tailoring her feedback only to the substance of the paper and asking him to directly address the analysis questions. (ECF No. 27-3, PageID.258.) Davis has no evidence to dispute Pickus' account other than his bare speculation that Pickus lied in her affidavit and that she did so to cover up a retaliatory motive. (ECF No. 33, PageID.368.) But there is no dispute that Davis was not removed from the program based on the first paper. So even making all justifiable inferences based on Davis' evidence, Davis has not presented affirmative evidence as required to "defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### F.

Objections six, seven, and eight attack Judge Grand's finding that Davis' analysis papers are not conduct protected by the First Amendment. Judge Grand reasoned that because the nature and tenor of Davis' writings violated the Inside-Out Program's rules, they do not constitute protected conduct. (ECF No. 32, PageID.347–350.)

In his sixth objection, Davis points out that the report does not identify which rule Davis' allegedly violated. (ECF No. 33, PageID.368.) The report relies on *Thaddeus-X v. Blatter* for the rule that "if a prisoner violates a legitimate prison regulation, he is not engaged in protected conduct." (ECF No. 32, PageID.347 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999).) But it is not clear whether

13

that rule applies here because Defendants have not identified a specific prison regulation that Davis violated.

Even without a prison regulation at issue, Davis' papers may not be protected conduct if they violated the Inside-Out Program's rules. The Court agrees with the report's statement that Davis' speech must be considered in the specific context of this case: as part of an educational class in a prison setting. (*See* ECF No. 32, PageID.348.)

Although the Court has not identified any cases with similar facts to this one, principles from both the education and prison context are applicable.

Free speech rights in the classroom are limited. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513, (1969) ("[C]onduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech."); *Settle v. Dickson Cty. Sch. Bd.*, 53 F.3d 152, 155 (6th Cir. 1995) ("The free speech rights of students in the classroom must be limited because effective education depends not only on controlling boisterous conduct, but also on maintaining the focus of the class on the assignment in question."). "So long as the teacher limits speech or grades speech in the classroom in the name of learning and not as a pretext for punishing the student for her race, gender, economic class, religion or political persuasion, the federal courts should not interfere." *Id.*; *see also Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988) ("[Public schools] may exercis[e] editorial

control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns.").

And free speech rights are even more limited in the prison context. A prison may restrict an inmate's constitutional rights as long as the regulation is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Although the Sixth Circuit has stated that "the counters of free speech rights in the prison setting . . . are less clear," *Thaddeus-X*. 175 F.3d at 391, courts generally give great deference to the administrative decisions of prison officials, *see, e.g.*, *Turner*, 482 U.S. at 89.

The Court agrees with Judge Grand's statement that "given Pickus' role as an instructor *in the correctional setting*, it is appropriate to afford substantial deference to her evaluation of Davis' paper as containing "inappropriate content" and exhibiting "an over-familiarity and inappropriate closeness and fixation with [her]." (ECF No. 32, PageID.349 (quoting (ECF No. 27-3, PageID.258).)

In objections seven and eight, Davis protests Judge Grand's citation of two cases in which courts upheld restrictions on the content of student writings in the classroom: *Corlett v. Oakland Univ. Bd. of Trustees*, 958 F. Supp. 2d 795 (E.D. Mich. 2013) and *Settle v. Dickson Cty. Sch. Bd.*, 53 F.3d 152 (6th Cir. 1995). Davis argues that the cases are not factually analogous to his own. But despite differences in the facts, the concepts are still applicable to Davis' case.

In *Corlett*, the plaintiff, in a writing assignment for class, "referred to his university English professor as 'stacked' and graphically compared her to a sitcom character he fetishized." 958 F. Supp. 2d at 797. In response, the plaintiff was removed from the class and the school took further disciplinary action against him. *Id.* at 800. The court held that the writings were not entitled to First Amendment protection because the school "reasonably could have found his writings inappropriate from a student to a teacher . . . and punished him accordingly." *Id.* at 809. The court explicitly noted that it did not matter whether the content of the writing rose to the level of obscenity or sexual harassment, but only that the sanctions were imposed because the teacher and the school believed the writings were inappropriate and that sanctions were necessary. *Id.*

The same is true of Davis' case. Although Davis' writings did not explicitly "sexualize or objectify" Pickus (ECF No. 33, PageID.371), Pickus testified that she felt Davis' writing was inappropriate and his apparent fixation on her made her uncomfortable (ECF No. 27-3, PageID.258). Again, Davis has not presented any evidence that legitimately calls into question Pickus' sworn declaration. Like in *Corlett*, Pickus found Davis' writings to be inappropriate towards her and not conducive to the class' learning objectives and she took remedial action against Davis accordingly.

Davis also argues that his case is not analogous to *Settle*, because in that case the student received a failing grade for writing on an approved topic, but Davis received a grade of 5 out of 5 on his first paper. (ECF No. 33, PageID.372–373.) That

distinction is irrelevant. Judge Grand cites *Settle* not because the case is factually identical to Davis', but because it sets out important and relevant standards to analyze cases involving student speech in the classroom.

Davis insists that his writings were protected speech and any content that was "provocative and challenging" was simply part of the free exchange of ideas in the classroom. (ECF No. 33, PageID.372 (quoting *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949).) But as discussed, although a teacher or school may not retaliate against a student for his viewpoint, free speech in the classroom setting is limited and teachers have broad discretion to manage their classrooms and curriculums as they see fit. The Sixth Circuit made clear in *Settle* that "[s]tudents do not lose entirely their right to express themselves as individuals in the classroom, but federal courts should exercise particular restraint in classroom conflicts between student and teacher over matters falling within the ordinary authority of the teacher over curriculum and course content." 53 F.3d 152, 155 (6th Cir. 1995). So the Court finds no merit in Davis' objections to the conclusion that his papers are not entitled to First Amendment protection.

## G.

Davis' final objection concerns Judge Grand's recommendation to dismiss Davis' due process claim. As Judge Grand explained, "federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment." (ECF No. 32, PageID.351 (quoting *Adams v. Mohrman*, No. 20-cv-99,

2020 WL 4581655, at *3 (W.D. Mich. Aug. 10, 2020) (additional internal citations omitted).)

Davis argues that because he was a student in the Inside-Out Program, he has a liberty interest protected by procedural due process. (ECF No. 33, PageID.375.) But what Davis fails to understand is that although he was a student, he was also an inmate taking a class in a prison setting. So the precedents cited in the report that hold that prisoners do not have a constitutionally-protected right to education do apply to this case. And Davis has not offered any cases in the prison context to refute these precedents.

**IV.**

For all of the reasons stated, the Court overrules Davis' objections (ECF No. 33) and adopts the Report and Recommendation (ECF No. 32). Defendants' motion for summary judgment (ECF No. 27) is GRANTED and the case is DISMISSED.

SO ORDERED.

Dated: July 9, 2021

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE